1  NICOLA T. HANNA
United States Attorney
2  BRANDON D. FOX
Assistant United States Attorney
3  Chief, Criminal Division
STEVEN R. WELK (CBN 149883)
4  Assistant United States Attorney
5  Chief, Asset Forfeiture Section
6      312 North Spring Street, 14th Floor
7      Los Angeles, California 90012
       Telephone:  (213) 894-6166
8      Facsimile:  (213) 894-0142
9      E-mail: Steven.Welk@usdoj.gov
10
11 Attorneys for Plaintiff
   UNITED STATES OF AMERICA
12
13              UNITED STATES DISTRICT COURT
14        FOR THE CENTRAL DISTRICT OF CALIFORNIA
                    EASTERN DIVISION
15

16 | UNITED STATES OF AMERICA, | NO. EDCV 17-1872 DMG (SPx) |
17 | Plaintiff, | |
18 | v. | **PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ORDER AUTHORIZING INTERLOCUTORY SALE OF DEFENDANT REAL PROPERTY; DECLARATION OF AUSA STEVEN R. WELK; EXHIBITS** |
19 | REAL PROPERTY LOCATED AT | |
20 | 10681 PRODUCTION AVENUE, FONTANA, CALIFORNIA, | |
21 | | |
22 | Defendant. | |
23 | 10681 PRODUCTION AVENUE, LLC, | Date: April 3, 2020 |
24 | Claimant. | Time: 9:30 a.m.<br>Courtoom: 8C |
25 | | |
26 | | |
27
28

1

1    PLEASE TAKE NOTICE that on April 3, 2020, at 9:30 a.m. or as soon

2  thereafter as the Court may order, plaintiff United States of America ("the

3  government" or "plaintiff") will present a motion for an Order authorizing the

4  interlocutory sale of the defendant real property located at 10681 Production

5  Avenue, Fontana, California with assessor parcel number 0255-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 (the

6  "defendant real property"), before the Honorable Dolly M. Gee, United States

7  District Court, Courtroom 8C, 350 West 1st Street, Los Angeles, California 90012.

8    The motion is brought pursuant to Rule G(7) of the Supplemental Rules for

9  Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental

10 Rules").  Pursuant to Local Rule 7-3, the parties held a conference of counsel on

11 January 24, 2020 before this motion was filed.

12    The motion is based upon this Notice of Motion and Motion, the attached

13 Memorandum of Points and Authorities, the Declaration of Steven R. Welk ("Welk

14 Decl."), other facts appearing in the court's file, and upon such further evidence,

15 oral or documentary, as may be presented prior to or at the hearing on this motion.

16

17 DATED: March 5, 2020          Respectfully Submitted,

18
                               NICOLA T. HANNA
19                             United States Attorney
                               BRANDON D. FOX
20                             Assistant United States Attorney
                               Chief, Criminal Division
21
22                              /s/ Steven R. Welk
                               _____
23                             STEVEN R. WELK
                               Assistant United States Attorney
24                             Chief, Asset Forfeiture Section
25
                               Attorneys for Plaintiff
26                             UNITED STATES OF AMERICA
27
28

2

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2 **I.      INTRODUCTION**

3          Claimant 10681 Production Avenue, LLC ("Claimant") is a Delaware

4 limited liability company registered in the State of California as a foreign entity. It

5 is the owner of the defendant real property.  The government alleges that Claimant

6 used the defendant real property to conceal and harbor illegally imported

7 aluminum "pallets" to avoid anti-dumping duties, rendering the property subject to

8 forfeiture pursuant to 19 U.S.C. § 1595a(a).  Docket Number ("DN") 1 at ¶ 20.

9 Claimant is also a defendant in the criminal prosecution entitled *United States v.*

10 *Liu, et al.*, CR 19-282 RGK ("*Liu*"), but has refused to appear in *Liu*, despite

11 having been duly served with a summons and ordered to appear.  On October 7,

12 2019, the Honorable R. Gary Klausner, ordered the Claimant to pay civil contempt

13 sanctions at a rate of $2,000.00 per calendar day, to be increased after four weeks

14 to $4,000.00 per calendar day, until Claimant appeared before the Court.  Welk

15 Decl. ¶ 2.  On February 9, 2020, Judge Klausner increased the civil contempt

16 sanctions against Claimant to $8,000.00 per calendar day, for its continuing refusal

17 to appear before the Court.  Welk Decl. ¶ 3.  As of March 4, 2020, Claimant has

18 refused to schedule or make an appearance before the *Liu* Court. The sanctions

19 against it now total $628,000.00 through March 4, 2020.  Welk Decl. ¶ 6.

20          Notwithstanding its refusal to face the criminal charges against it in *Liu*,

21 Claimant continues to seek to litigate this action, which arises out of the same

22 general allegations as the indictment.  It does so while simultaneously refusing to

23 pay the property taxes accruing against the property.  Pursuant to Supplemental

24 Rule (G)(7)(b)(i), this Court has authority to order an interlocutory sale of real

25 property that is a defendant in a civil forfeiture action under certain circumstances,

26 including when the property is subject to taxes that have not been paid.

27 Supplemental Rule (G)(7)(b)(i)(C) and (D).  As of March 4, 2020, Claimant is

28 delinquent on property taxes from years 2017 through 2019, in the amount of

1

1   $2,541,542.70, including penalties and interest.  Welk Decl. ¶ 5.  On April 10,

2   2020, an additional tax payment of $500,373.13 will be due.

3        The government contends that Claimant should be barred from contesting

4   the instant motion, or any other proceedings in this case, for the reasons stated in

5   the government's already-pending motion made pursuant to 28 U.S.C. § 2466,

6   colloquially known as the fugitive disentitlement doctrine (DN 46, taken under

7   submission on December 12, 2019 (DN 59)).  In that motion, the government

8   argued that this Court should strike Claimant's claim and enter default against it

9   because Claimant is a fugitive from justice before another Court in this district.  As

10  explained in detail in the prior motion, Section 2466 authorizes a Court to bar a

11  fugitive from defending against civil forfeiture claims while simultaneously

12  refusing to submit to the jurisdiction of the court in which it has been charged

13  criminally for related conduct.

14       The government now moves for an order for the interlocutory sale of the

15  defendant real property based on Claimant's failure to remain current on property

16  taxes.  The daily accrual of taxes and penalties triggered by the nonpayment of tax

17  represents a daily drain on the equity of the property.  The nonpayment of tax also

18  suggests a lack of confidence on Claimant's part that it can prevail in this action.

19  Finally, Claimant's nonpayment of taxes, when considered in combination with its

20  refusal to appear in *Liu* – and despite the daily accrual of crushing sanctions –

21  indicates a level of contempt for this Court and the laws of the State that are

22  materially inconsistent with Claimant's invocation of any legal protections this

23  Court may otherwise be inclined to extend.

24       For the reasons explained below and in the government's pending fugitive

25  disentitlement motion, the defendant real property should be sold and the net

26  proceeds from the sale retained by the government pending the resolution of this

27  civil forfeiture case.

28  ///

2

1  **II.      PROCEDURAL HISTORY**

2          On September 14, 2017, the government commenced this action, seeking the

3  civil forfeiture of the defendant real property on the ground that it is subject to

4  forfeiture pursuant to 19 U.S.C. § 1595a(a) because it was used to conceal and

5  harbor illegally imported aluminum extrusions that had been configured in the

6  shape of pallets for the purpose of avoiding anti-dumping duties, which "pallets"

7  were not, in fact, useable as pallets.  DN 1 at 2-3.[1]   The illegal entry of the

8  aluminum into the United States through its misidentification resulted in the

9  avoidance of approximately $1.5 billion in duties by the *Liu* defendants.  *Id*. at ¶

10  25.  Notice of the action was given and published in accordance with law (*see* DN

11  25 *re* publication notice) and, on October 3, 2017, Claimant filed a timely verified

12  claim, asserting that it was the owner of the defendant real property and intended to

13  contest the forfeiture thereof.  DN 13.  No other claims were filed, and time for

14  filing claims has expired.

15          On January 19, 2018, the government moved to stay the instant action

16  pursuant to 18 U.S.C. § 981(g), on the ground that the case was related to an

17  ongoing federal criminal investigation of the illegal importation of the "pallets,"

18  and that proceeding with the forfeiture action was likely to have an adverse effect

19  on the ongoing criminal investigation.  DN 28.  That motion was withdrawn on

20  February 23, 2018, when the government and Claimant made a joint request that

21  _____

22  [1] This case is one of five civil forfeiture cases arising from the same basic universe
of facts: *United States v. Real Property Located at 1001 S. Doubleday Avenue,*

23  *Ontario, California*, EDCV 17-1873 DMG (SPx) (Claimant – 1001 Doubleday,
LLC);  *United States v. Approximately 279,808 Aluminum Structures in the Shape*

24  *of Pallets*, CV 18-1023 DMG (SPx) (Claimant - Perfectus Aluminum, Inc.); *United*

25  *States v. Real Property Located at 10681 Production Avenue, Fontana, California*,
EDCV 17-1872 DMG (SPx) (Claimant – 10681 Production Avenue, LLC*); United*

26  *States v. Real Property Located at 14600 Innovation Drive, Riverside, California*,

27  EDCV 17-1875 DMG (SPx) (Claimant – Scuderia Development, LLC); and

28  *United States v. Real Property Located at 2323 Main Street, Irvine, California*,
SACV 17-1592 DMG (SPx) (Claimant – Von Karman-Main Street, LLC).

1   the Court stay the case in light of the ongoing criminal investigation.   DN 30 and

2   31.  The Court issued an Order staying the action on February 26, 2018.  DN 32.

3        On May 7, 2019, Claimant was among the organizational defendants

4   charged in *Liu* in a 24-count indictment alleging, among other things, conspiracy to

5   commit wire fraud, customs-related fraud, and international promotional money

6   laundering.  *See* the *Liu* indictment, a true and correct copy of which is attached as

7   exhibit 3 to the Welk Decl.  The charges set out in the *Liu* indictment arise from

8   the same conduct described in the Complaint.  The *Liu* Indictment was filed under

9   seal, and remained under seal until July 30, 2019, after which the government

10  served the *Liu* summons on the U.S. entities, including Claimant.  Such service

11  was accomplished not only by serving the summons by certified mail on

12  Claimant's registered agent for service of process or organizational officer, as

13  required by Rule 4 of the Federal Rules of Criminal Procedure, but by sending the

14  summons (also by certified mail) to Claimant's then-counsel in connection with the

15  criminal investigation.  The details of the government's service of the summons on

16  the U.S. entities is set out in the Welk Decl. attached to the government's motion

17  to strike Claimant's claim.  DN 46-1.

18  **III.    ARGUMENT**

19       Civil judicial forfeiture cases are governed procedurally by 18 U.S.C. § 983

20  and the Supplemental Rules, Rule G(7)(b)(i)(C) of which provides that a court may

21  order the interlocutory sale of all or part of property subject to a pending asset

22  forfeiture action if "the property is subject to a mortgage or to taxes on which the

23  owner is in default."  The sale must be made by a United States agency that has

24  authority to sell the property, the agency's contractor, or any person that the court

25  designates.  Rule G(7)(b)(ii).  The sale is governed by 28 U.S.C. §§ 2001, 2002

26  and 2004, unless all parties, with the court's approval, agree to the sale, aspects of

27  the sale or different procedures.  Rule G(7)(b)(iii).

28  ///

4

1    When the sale is made, the sale proceeds shall be considered a "substitute

2    res" subject to forfeiture in place of the property that was sold.  The proceeds must

3    be held in an interest-bearing account maintained by the United States pending the

4    conclusion of the forfeiture action.  Rule G(7)(b)(iv).  If the court ultimately orders

5    the forfeiture of the sale proceeds, the property is disposed of as provided by law.

6    Rule G(7)(c).

7    Courts have ordered the interlocutory sale of forfeitable property over the

8    objection of a defendant or claimant where the equity was being depleted by

9    accruing taxes and interest on a mortgage and where mortgage payments were

10   several months in arrears. *See, e.g., United States v. Pelullo*, 178 F.3d 196, 198-99

11   (3d Cir. 1999); *United States v. One Parcel of Real Property Described as Lot 41,*

12   *Berryhill Farm Estates*, 128 F. 3d 1386, 1389-90 (10th Cir. 1997).

13   Here, a court-ordered interlocutory sale of the defendant real property is

14   justified because, as of March 4, 2020, the defendant real property is delinquent in

15   property taxes from years 2017 through 2019, in the amount of $2,541,542.70.  *See*

16   exhibit 4 to the Welk Decl.  The next property tax installment, of $500,374.13, is

17   due on April 10 (*id.*) and, if not paid, will increase the outstanding amount due to

18   $3,041,916.83.  California law provides that the failure to pay real property taxes

19   when due causes a lien to arise against the property in the amount of the unpaid

20   tax, plus all applicable interest and penalties.  *See* California *Revenue and Taxation*

21   *Code* § 19221.  The failure to remain current on real property taxes creates "a

22   perfected and enforceable state tax lien" (*id.*) as a matter of law, which must be

23   satisfied out of the proceeds of any sale of the property.  As a direct result, the

24   value of the defendant real property decreases every day due to the accrual of

25   additional interest on the outstanding tax debt.  Thus, an interlocutory sale will

26   result in the loss of millions of dollars in value, attributable in its entirety to

27   Claimant's unjustified failure to comply with the taxing obligations it knowingly

28   and voluntarily assumed when it acquired the property.

## IV.   PROPOSED INTERLOCUTORY SALE PROCEDURE

Where, as here, the parties are not in agreement on the need for an interlocutory sale of real property that is a defendant in a civil forfeiture action, Rule G(7)(b) requires that any sale ordered by the Court proceed pursuant to 28 U.S.C. §§ 2001 and 2002.[2]  Section 2001 authorizes both public and private interlocutory sales, the former to include the traditional "auction on the courthouse steps," and the latter applying to a sale to a known potential buyer.[3]

///

---

[2] 28 U.S.C. § 2004 applies only to personal property defendants.

[3] Section 2001 provides:

> (a) Any realty or interest therein sold under any order or decree of any court of the United States shall be sold as a whole or in separate parcels at public sale at the courthouse of the county, parish, or city in which the greater part of the property is located, or upon the premises or some parcel thereof located therein, as the court directs. Such sale shall be upon such terms and conditions as the court directs.
>
> . . . .
>
> (b)After a hearing, of which notice to all interested parties shall be given by publication or otherwise as the court directs, the court may order the sale of such realty or interest or any part thereof at private sale for cash or other consideration and upon such terms and conditions as the court approves, if it finds that the best interests of the estate will be conserved thereby.  Before confirmation of any private sale, the court shall appoint three disinterested persons to appraise such property or different groups of three appraisers each to appraise properties of different classes or situated in different localities.  No private sale shall be confirmed at a price less than two-thirds of the appraised value.  Before confirmation of any private sale, the terms thereof shall be published in such newspaper or newspapers of general circulation as the court directs at least ten days before confirmation. The private sale shall not be confirmed if a bona fide offer is made, under conditions prescribed by the court, which guarantees at least a 10 per centum increase over the price offered in the private sale.

1    One thing that is clear from Rule G and § 2001, as well as the authorities

2    interpreting them, is that the goal of an interlocutory sale is to obtain the best price

3    possible for the property without unfairly infringing on the rights of the recalcitrant

4    owner/claimant.  *Sec. & Exch. Comm'n v. Champion-Cain*, No. 3:19-CV-1628-

5    LAB-AHG, 2019 WL 6834661, at *3-4 (S.D. Cal. Dec. 13, 2019) ("These

6    statutory safeguards…help to ensure that the sale is able to fetch the best price

7    possible…."); *United States v. Grable*, 25 F.3d 298, 303 (6th Cir. 1994) ("the

8    intent of" the requirement in 28 U.S.C. § 2001 that property be sold at the

9    courthouse in the county or city in which the land is situated is "to bring a better

10   price at the sale").  Courts are empowered to maximize the chances of achieving

11   that goal by the last sentence of the first paragraph of § 2001(a), which provides

12   that "such sales shall be upon such terms and conditions as the court directs."

13   The [proposed] Order Authorizing Interlocutory Sale lodged

14   contemporaneously with this motion provides that:

15   (1)    The government shall be authorized to take possession, custody and

16          control of the defendant real property fourteen (14) days after entry of

17          the Order;

18   (2)    The government, at its option, may engage a manager or management

19          company to manage the property during the interlocutory sale process;

20   (3)    Two (2) appraisals of the defendant real property shall be obtained,

21          with one appraiser chosen by the government, and one chosen by the

22          Claimant, unless the parties can agree on a single appraiser, in which

23          case only one appraisal need by obtained.[4]

24   (4)    The appraisal(s) listed above shall be obtained forthwith following the

25          government's taking possession of the defendant real property, and

26

27   [4] Should Claimant fail or refuse either to (a) obtain an appraisal in a timely manner,

28   or (b) reach agreement with the government on a single appraisal, the government
     may proceed with a single appraisal.

7

completed not later than 45 days after the government takes possession of the property;

(5) The defendant real property shall be publicly listed for sale in a commercially reasonable manner by a real estate broker chosen by the government,[5] with an asking price that shall be no less than 90% of the appraised value established by a single appraiser, or 90% of the average of the appraised value if two appraisers are engaged;

(6) The government shall be authorized, without further order of the Court, to sell the defendant real property to a buyer that is ready, willing and able to pay the full asking price (or more);

(7) If the government believes that it is necessary and appropriate to enter into a purchase agreement with a buyer for a price that is less than the full appraised value of a single appraisal, or the average full appraised value as determined by two appraisals, the government shall file an application for approval of the proposed sale, with notice to Claimant, setting out the details of the proposed sale (which details shall be filed under seal in a separate filing) and an explanation for the reasons that a sale at the reduced price is necessary and appropriate;

(8) The gross proceeds of the interlocutory sale of the defendant real property shall be distributed in the following priority:

(a) First, payment of all outstanding real property taxes to the San Bernardino County Tax Collector to the date of closing;

(b) Second, actual expenses incurred by the government in connection with the management and sale of the property;

(c) Third, all costs of escrow and sale, including commissions, fees, closing costs, *etc.*;

---

[5] The public listing of the defendant real property for sale shall satisfy the notice requirements of 28 U.S.C. § 2002.

8

1         (d)    Fourth, toward satisfaction of any secured lienholder; and

2         (e)    Fifth, the remainder (the "net proceeds") to be deposited in an

3                interest-bearing account in the custody of CBP, to be treated as

4                the substitute res in place of the defendant real property.

5    (9)    Claimant shall designate a natural person representative to execute

6         whatever documents are necessary to carry into effect any

7         interlocutory sale made pursuant to the proposed Order.  Should

8         Claimant fail or refuse to do so, Claimant's counsel shall execute any

9         such documents on Claimant's behalf.

10    (10)   Should the management of the property while in government

11         possession result in the collection of rents or other income, such rents

12         or income shall be combined with the net proceeds of sale as the

13         substitute res, unless the Court orders otherwise.

14    Not later than seven (7) days after the closing of the sale, the government

15 shall file a notice with the Court advising of the amount of net proceeds obtained

16 from the sale of the property.

17 ///

18

19 ///

20

21 ///

22

23

24

25

26

27

28

9

1
## V.      CONCLUSION

2        For the reasons set forth above, the government respectfully requests that the

3    Court enter the proposed order for interlocutory sale of the defendant real property.

4

5    DATED: March 5, 2020              Respectfully Submitted,

6                                      NICOLA T. HANNA
                                       United States Attorney
7                                      BRANDON D. FOX
                                       Assistant United States Attorney
8                                      Chief, Criminal Division

9

10                                            /s/ Steven R. Welk
                                       STEVEN R. WELK
11                                     Assistant United States Attorney
                                       Chief, Asset Forfeiture Section
12

13                                     Attorneys for Plaintiff
                                       UNITED STATES OF AMERICA
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28